**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION**

| | |
|---|---|
| NUTRAMAX LABORATORIES, INC. and NUTRAMAX LABORATORIES VETERINARY SCIENCES, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> ROWLO, LLC D/B/A WUFFES, SATHISH.CO LLC D/B/A THE CUSTOMER DIGEST, and DOE ENTITY 1, <br><br> Defendants. | CASE NO.: <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiffs Nutramax Laboratories, Inc. ("Nutramax Labs") and Nutramax Laboratories Veterinary Sciences, Inc. ("Nutramax Vet") (collectively, "Nutramax"), by and through their undersigned counsel, file this Complaint for damages, disgorgement of profits, and injunctive relief against Rowlo, LLC d/b/a Wuffes ("Wuffes"), Sathish.Co LLC d/b/a The Customer Digest, and Doe Entity 1 (Sathish.Co LLC and Doe Entity 1, "The Customer Digest") (collectively, "Defendants"). In support thereof, Nutramax alleges as follows:

**NATURE AND BASIS OF THE ACTION**

1.     This is an action against Defendants for their knowing and willful false or misleading advertising, unfair competition, and deceptive trade practices concerning their promotion of Wuffes-branded pet health supplements.

2.      Nutramax researches, develops, and sells high-quality, innovative health supplements that benefit animals. Because of its commitment to the development and testing of its products, Nutramax has become acclaimed for its high-quality animal health supplement products.

3.      Defendant Wuffes directly competes with Nutramax. Yet rather than employing lawful means to compete with a direct competitor and promote their competing WUFFES-branded products, Wuffes chose to contract and otherwise collaborate with The Customer Digest to publish a false and misleading article that deceives consumers about the nature, characteristics, and qualities of WUFFES-branded products.

4.      Defendants are deceiving consumers by (1) creating, publishing, and/or disseminating false and misleading advertising comparing the Wuffes Advanced Hip & Joint Support supplements (the "Wuffes Joint Chews") to Nutramax's competing joint health supplements; (2) knowingly and willfully creating and publishing false and misleading advertising regarding the ingredients, characteristics, and qualities of the Wuffes Joint Chews; and (3) knowingly and willfully deceiving consumers into believing that the false or misleading advertising is the result of an independent, unbiased, and/or expert third-party review of Wuffes Joint Chews.

5.      Nutramax is therefore compelled to bring this action to protect consumers and their pets from false and misleading advertising about pet supplements, to protect the reputation of the pet health supplement industry at large, and to protect Nutramax's own reputation in light of the false and misleading statements and unfair competition complained of herein.

6.      Defendants' actions constitute: (1) false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (2) false advertising in violation of New York General Business law § 350; (3) unlawful deceptive acts and practices in violation of New York General

Business Law § 349; (4) unfair competition in violation of New York common law; and (5) trade libel in violation of New York common law. In addition, Defendants' conduct has damaged (and continues to damage) Nutramax by: (a) harming Nutramax's goodwill and reputation; and (b) causing Nutramax to lose both existing and prospective Nutramax customers, and especially across Nutramax's joint health supplement products that directly compete with Wuffes' products. Nutramax is therefore compelled to bring this action to protect consumers and their pets from Defendants' false and misleading advertising and to protect the reputation of the pet health supplement industry at large.

7.      Nutramax seeks injunctive relief as well as its actual damages, a disgorgement of Defendants' profits, punitive damages, costs, attorneys' fees, and other relief under federal and New York law for Defendants' false advertising, unfair competition, deceptive business practices, and wrongful conduct.

## THE PARTIES

8.      Nutramax Labs is a corporation organized and existing under the laws of the state of South Carolina. Nutramax Labs maintains its headquarters and principal place of business at 946 Quality Drive, Lancaster, South Carolina 29720.

9.      Plaintiff Nutramax Vet is a corporation organized and existing under the laws of the state of South Carolina. Nutramax Vet also maintains its headquarters and principal place of business at 946 Quality Drive, Lancaster, South Carolina 29720.

10.      Defendant Wuffes is a Wyoming limited liability company with its principal place of business at 1603 Capitol Avenue, Suite 310 A550, Cheyenne, Wyoming 82001. Wuffes advertises, promotes, offers for sale, and sells dietary and nutritional supplements for animals under the WUFFES trademark throughout the United States, including in this District, that

compete directly with Nutramax's pet health supplements. While this Court has federal question jurisdiction, for purposes of diversity jurisdiction, Rowlo Capital US, Inc. is the sole managing member of Wuffes, is a corporation organized and existing under the laws of the state of Wyoming, and maintains its principal place of business at 25350 Magic Mountain Parkway, Suite, 300, Santa Clarita, California 91355.

11.    Defendant Sathish.Co LLC is a limited liability company organized and existing under the laws of New York. Sathish.Co LLC can be served with copies of the Summons and Complaint by serving its registered agent, Sathish Naadimuthu, at 904 Lincoln Place, #2 Brooklyn, New York 11213. Based upon Nutramax's investigation to date, on information and belief Sathish Naadimuthu is the sole member of Sathish.Co LLC and resides at 904 Lincoln Place, #2 Brooklyn, New York 11213.

12.    Upon information and belief and upon counsel's investigation to date, Sathish.Co LLC owns and operates the domain <thecustomerdigest.com>, which is a consumer products review site and provides recommendations to consumers regarding consumer products and services. Specifically, as of February 25, 2025 via his LinkedIn page, Sathish Naadimuthu states that he is the "CEO at nf&co. + The Customer Digest" and identifies The Customer Digest Network as affiliated with nf&co. A true and correct copy of Sathish Naadimuthu's LinkedIn Page is attached hereto as **Exhibit A**.

13.    In the alternative, Defendant Doe Entity 1 is the individual, partnership, limited liability company, corporation, or other business entity or unincorporated association who: (1) owns and operates the domain <thecustomerdigest.com>; (2) personally authorized, directed, and/or participated in the conduct complained of herein; and/or (3) knows or has reason to know of the conduct complained of herein and materially contributed property or other assistance to

those activities. Nutramax will amend and/or supplement this Complaint to identify this entity upon further investigation, if such amendment and/or supplement is necessary.

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction over Nutramax's federal claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1337 because this action arises under the Federal Lanham Act, 15 U.S.C. §§ 1051 *et seq*.

15.    This Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. Specifically, plaintiffs are both South Carolina corporations with their principal places of business located at 946 Quality Drive, Lancaster, South Carolina 29720. Wuffes is a citizen of Wyoming and California (with its sole managing member having a state of incorporation in Wyoming and principal place of business in California). Sathish.Co LLC is a New York limited liability company, and, upon information and belief, its sole member is a resident of New York. Accordingly, there is complete diversity between plaintiffs and defendants in this action.

16.    This Court has supplemental jurisdiction over Nutramax's related state law claims pursuant to 28 U.S.C. § 1367.

17.    Wuffes is subject to personal jurisdiction in this Court because it has purposefully availed itself of the benefits of doing business in New York by advertising, promoting, offering for sale, and/or selling products to consumers in New York.

18.    More specifically, upon information and belief, Wuffes entered into a contract or other agreement whereby it would pay The Customer Digest to advertise on The Customer Digest's website. Accordingly, the false or misleading advertising complained of herein was

published and disseminated at the direction of and/or with the assistance of Wuffes and by The Customer Digest through its conduct and commercial operations in Brooklyn, New York. In addition, by engaging in this conduct, Wuffes purposefully availed itself of the benefits of doing business in the State of New York and has continued to commit tortious actions in New York that have caused Nutramax injury in New York.

19.    Sathish.Co LLC is subject to personal jurisdiction in this Court because it is "at home" in the State of New York. Sathish.Co LLC is further subject to personal jurisdiction in this Court because it has purposefully availed itself of the benefits of doing business in New York by writing, editing, and publishing false and misleading advertising content from New York and targeting said published material to readers and consumers located in New York. Sathish.Co LLC is therefore committing tortious acts in New York and has wrongfully caused Nutramax substantial injury in New York.

20.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b)(2) and (3) as a substantial part of the events or omissions giving rise to Nutramax's claims occurred in this District, because Defendants are subject to this Court's personal jurisdiction with respect to this action, and because Sathish.Co LLC is deemed to reside in this District.

## FACTUAL BACKGROUND

## I.    NUTRAMAX AND ITS PRODUCTS

21.    Nutramax researches, develops, and sells high-quality, innovative health supplements that benefit animals.

22.    Since at least as early as 1992, Nutramax, on its own and through its licensed affiliates and resellers, has sold its health supplement products for animals across the United States through a diversified portfolio of well-recognized and widely-trusted health supplement products,

including but not limited to its Cosequin® and Dasuquin® product lines for the support of joint health in dogs and cats.

23.    Nutramax's wide variety of animal health supplements are used for numerous purposes, including to support joint, liver, and immune health.

24.    Nutramax's dog health supplement products are widely regarded as being among the best in the nutritional supplement industry because they are supported by research and studies, contain verified and validated active ingredients from reliable sources, and are manufactured in accordance with strict standards that ensure consumers receive a high-quality, safe, and effective product.

25.    Over the years, Nutramax has spent millions of dollars researching and developing its innovative health supplement products, and Nutramax devotes significant financial resources each year – in the form of marketing, advertising, and other initiatives—building its brand as a provider of high-quality, safe, and effective animal health supplements.

26.    By virtue of Nutramax's commitment to the development and testing of its products, Nutramax has become acclaimed for its high-quality health supplement products. Nutramax's products are some of the most well-known and respected in the industry, and many are the most frequently recommended products by veterinarians who recommend animal supplements.

27.    Because of Nutramax's hard work developing and testing its dog joint health supplements, they have achieved widespread acclaim and are commonly understood to be the market leaders in the pet health supplement industry in the joint health category. For instance, Nutramax markets and distributes the nation's leading joint health supplements, both in tablet and chewable form, that compete directly with WUFFES-branded joint chews. Nutramax's dog joint

health supplements are the most popular in the United States. Nutramax has generated significant

sales of its dog joint health supplements nationwide, including in this judicial district.

28.     Nutramax offers numerous varieties of joint health supplements for dogs, including

in the form of tablets and soft chews. These joint health supplements contain Glucosamine

Hydrochloride, and Nutramax's joint health supplement lines include formulations that contain

Sodium Chondroitin Sulfate, Hyaluronic Acid, and Methylsulfonylmethane ("MSM").

## II.    DEFENDANTS' UNLAWFUL ACTIONS

### a.    Background Regarding Defendants

29.     Wuffes manufactures (or contracts for the manufacture of), markets, and sells pet

health supplements that compete directly with Nutramax's pet health supplements, *e.g.*, Wuffes

Advanced Hip & Joint Support supplements (the "Wuffes Joint Chews") compete directly with

Nutramax's Cosequin® and Dasuquin® hip and joint health supplements.

30.     The Customer Digest creates and publishes the content on its website at

<thecustomerdigest.com> ("TCD Website").

31.     On the TCD Website at <https://thecustomerdigest.com/post/wuffes-dog-joint-

supplement-review-does-it-really-beat-the-leading-brands>, The Customer Digest published an

article comparing the Wuffes Joint Chews to the "leading brand" of joint health supplements for

dogs (the "Advertisement"). A true and correct copy of the Advertisement is attached hereto as

**Exhibit B**.

### b.    Defendants' False or Misleading Advertisements

### i.    <u>The False and Misleading Comparative Chart</u>

32.     The Advertisement compares the Wuffes Joint Chews to the "long-standing market

leaders." *See* Exhibit B. The Advertisement's comparison to the "long-standing market leaders" is

an unambiguous reference to Nutramax's dog joint health supplements, which have long been recognized as the market leaders in the pet health supplement industry in the joint health category.

33.     The Advertisement contains the following chart directly comparing the active ingredients in the Wuffes Joint Chews to two different varieties of Nutramax's dog joint health supplements:

| | **Wuffes** | **Leading Brand's Tablet** | **Leading Brand's Chewable** |
|---|---|---|---|
| Glucosamine | 2500mg | Less | Less |
| MSM | 800mg | Less | None |
| Chondroitin | 300mg | Similar | Similar |
| Hyaluronic Acid | 42mg | None | None |
| Green Lipped Mussels | 400mg | None | None |
| Synthetic Additives | None | Yes – dextrose, "artificial flavors" | None |
| Form | 1 soft chew/day | 3 tablets/day for the first 6 weeks, 1-2 tablets/day afterward | 2 chews/day for the first 6 weeks, 1 chew/day afterward |

*Based on the daily maintenance dosage for a 120lb+ dog*

*See* Exhibit B (the "Comparative Chart").

34.     The Comparative Chart (and analogous claims in the Advertisement) makes multiple false and misleading statements about the amounts of ingredients in Wuffes Joint Chews.

35.     For instance, the Comparative Chart (and analogous claims in the Advertisement) falsely and misleadingly misrepresent the amounts of ingredients (specifically, glucosamine, MSM, chondroitin, hyaluronic acid, and/or green lipped mussels) in Wuffes Joint Chews for at least four reasons:

a. First, the Comparative Chart is false and misleading because it overstates the content of green lipped mussels in the Wuffes Joint Chews by a factor of two. The Comparative Chart states that Wuffes Joint Chews provides 400 mg of green lipped mussels in a daily maintenance dosage. This claim is false and misleading because Wuffes' own website states that Wuffes Joint Chews contain only half that amount (200 mg) of green lipped mussels in a daily maintenance dosage for a 120lb+ dog. *See* https://wuffes.com/products/advanced-hip-joint-support-for-large-breeds. A true and correct copy of the Wuffes' website at the preceding URL is attached hereto as **Exhibit C**. *Compare* Exhibit B *with* Exhibit C.

b. Second, the Comparative Chart states that the amounts of the foregoing ingredients are "based on the daily maintenance dosage for a 120lb+ dog" and that the dose of Wuffes Joint Chews for such a dog is one soft chew per day. *See* Exhibit B. However, Wuffes' website states that the recommended dose of the Large Breeds formulation of the Wuffes Joint Chews for a 120lb+ dog is ***two chews*** per day. *See* Exhibit C. The Comparative Chart thus is false and misleading because it overstates the amounts of the foregoing ingredients in a single Wuffes Joint Chew by a factor of two.

c. Third, and similarly, the Advertisement also falsely and misleadingly states that "Wuffes wins with 3-4x the glucosamine *and* MSM than the leading brand's tablet and chewable." *See* Exhibit B. However, as explained above, the Comparative Chart overstates the amounts of the listed ingredients (specifically, glucosamine, MSM, chondroitin, hyaluronic acid, and green

lipped mussels) in a single Wuffes Joint Chew by a factor of two. Therefore, the claim that the Wuffes Joint Chews contain three to four times more glucosamine and MSM than Nutramax's dog joint health supplements is false and misleading on its face.

d. Fourth, the Comparative Chart is false and misleading for misrepresenting that it provides a representative sample for all dog owners. The information in the Comparative Chart is based on "the daily maintenance dosage for a 120lb+ dog." *See* Exhibit B. The vast majority of dogs weigh, however, less than 120 pounds. For this reason, the Comparative Chart falsely and misleadingly represents the amounts of the ingredients that a dog of average weight would receive from a daily maintenance dosage of Wuffes Joint Chews.

36.    The foregoing ingredients claims outlined in this section (the "Wuffes Ingredient Claims") deceive or are likely to deceive consumers as to the composition of Wuffes Joint Chews and falsely imply that Nutramax's dog joint health supplements are inferior in quality to the Wuffes Joint Chews. These claims are false.

37.    Additionally, the Comparative Chart (and analogous claims in the Advertisement) make false and misleading comparisons between Wuffes Joint Chews and Nutramax's pet joint health supplements for at least five reasons:

a. First, the Comparative Chart represents that Nutramax does not have a dog joint health supplement in a soft chew form that contains MSM. This claim is false and misleading because Nutramax produces and markets dog joint health supplements in a soft chew form that contain MSM.

b.  Second, the Comparative Chart represents that Nutramax does not have a dog joint health supplement that contains Hyaluronic Acid. This claim is false and misleading because Nutramax produces and markets dog joint health supplements in both a tablet and soft chew form that contain hyaluronic acid.

c.  Third, the Advertisement also claims that the Wuffes Joint Chews feature "two other mobility support supplements – hyaluronic acid and green lipped mussels – that were not present in either competitor." This claim is false or misleading for the same reason – Nutramax produces and markets dog joint health supplements that contain hyaluronic acid.

d.  Fourth, the Comparative Chart is further misleading because it focuses on only a small set of active ingredients that impact the effectiveness of joint health supplements and fails to disclose that Nutramax's dog joint health supplements may contain active ingredients (like manganese) that are not present in the Wuffes Joint Chews.

e.  Fifth, the Comparative Chart makes a false and misleading apples-to-oranges comparison of the Wuffes Joint Chews to Nutramax's products. In contrast to the Comparative Chart's ingredient claims for a 120lb+ dog, Nutramax's dog joint health supplement websites do not provide administration information for dogs weighing "120lb+." Therefore, by claiming that Nutramax's pet joint health supplement products contain "less" or "similar" amounts of certain ingredients compared to Wuffes Joint Chews, the Comparative Chart makes false or misleading apples-to-oranges comparisons regarding the relative amounts of ingredients in Wuffes Joint Chews.

38.     The foregoing comparative advertising claims outlined in this section (the "Comparison Claims") deceive or are likely to deceive consumers as to the composition of Nutramax's dog joint health supplements and/or the Wuffes Joint Chews and falsely imply that Nutramax's dog joint health supplements are inferior in quality to the Wuffes Joint Chews. These claims are false.

39.     Purportedly "independent" product reviews—like that found on the TCD Website—have a powerful effect on consumer purchasing decisions because consumers often rely on and trust third-party reviews for accurate information and unbiased opinions.

40.     The composition of and active ingredients in a pet health supplement product, and how that composition compares to other products on the market, are key factors for consumers looking to purchase pet health supplement products and relate to an inherent quality or characteristic of the product. By communicating to consumers that WUFFES-branded products contain greater amounts of active ingredients and are comparatively "better" products, Defendants have and will continue to mislead consumers into believing that WUFFES-branded products must be superior to or of higher quality than competitors' (including Nutramax) products, which influences consumers to purchase WUFFES-branded products over Nutramax's products.

41.     The Wuffes Ingredient Claims and Comparison Claims are therefore material to consumers.

42.     The Wuffes Ingredient Claims and Comparison Claims have misled—and are likely to continue misleading—consumers into purchasing WUFFES-branded products instead of Nutramax's products.

43.    Nutramax has been and continues to be damaged as a result of the Wuffes Ingredient Claims and Comparison Claims by loss of Nutramax's existing customers, loss of potential customers, and damage to Nutramax's goodwill and reputation.

44.    Accordingly, the Wuffes Ingredient Claims and Comparison Claims constitute false or misleading advertising.

**ii.    The False and Misleading "Artificial Ingredients Claims"**

45.    The Advertisement also claims that the Wuffes Joint Chews have "no artificial additives," "no artificial fillers," no "synthetic additives," and "nothing artificial." *See* Exhibit B. In addition, the Advertisement states that "Wuffes is the only supplement that includes glucosamine, MSM, and chondroitin without any byproducts or artificial flavors/fillers." *See id.* (collectively, "Artificial Ingredients Claims"). And until recently, the Advertisement stated that the Wuffes Joint Chews "skip[] the artificial additives found in competitors."[1]

46.    These claims are false or misleading because the Wuffes Joint Chews include artificial ingredients, such as the active ingredient calcium ascorbate and the inactive ingredients coconut glycerin and mixed tocopherols. *See* Exhibit C. Calcium ascorbate, coconut glycerin, and mixed tocopherols are artificial in that they are not naturally occurring. For this reason, the Advertisement's statement that the Wuffes Joint Chews are free of artificial additives is false on its face.

47.    These false Artificial Ingredients Claims deceive or are likely to deceive consumers as to the composition of the Wuffes Joint Chews and falsely represent that Nutramax's dog joint health supplements are inferior in quality to the Wuffes Joint Chews.

---

[1] This specific language has since been revised to read "skip[] the harmful additives found in competitors." A true and correct copy of the Advertisement as it appears today is attached hereto as Exhibit D. *See* **Exhibit D**.

48.    Purportedly "independent" product reviews—like that found on the TCD Website—have a powerful effect on consumer purchasing decisions because consumers often rely on and trust third-party reviews for accurate information and unbiased opinions.

49.    The active ingredients in a pet health supplement product, and how that composition compares to other products on the market, is a key factor for consumers looking to purchase pet health supplement products and relates to an inherent quality or characteristic of the product. By communicating to consumers that WUFFES-branded products contain "nothing artificial" in contrast to competitors' products, Defendants have and continue to mislead consumers into believing that WUFFES-branded products must be superior to or of higher quality than competitors' (including Nutramax) products, which influences consumers to purchase WUFFES-branded products over Nutramax's products.

50.    The Artificial Ingredients Claims are therefore material to consumers.

51.    The Artificial Ingredient Claims have misled—and are likely to continue misleading—consumers into purchasing WUFFES-branded products instead of Nutramax's products.

52.    Nutramax has been and continues to be damaged as a result of the Artificial Ingredients Claims by loss of Nutramax's existing customers, loss of potential customers, and damage to Nutramax's goodwill and reputation.

53.    Accordingly, the Artificial Ingredients Claims constitute false or misleading advertising.

### iii.    The False and Misleading "Dosage" Claims

54.    The Advertisement states that Wuffes "stands out with optimized dosages of all three ingredients" and Nutramax's dog joint health supplements are "underdosed." *See* Exhibit B

(the "Dosage Claims"). This claim is false and misleading because Nutramax's dog joint health supplements are administered in appropriate amounts in accordance with industry standards and peer-reviewed literature.

55.    The Dosage Claims outlined above deceive or are likely to deceive consumers as to the composition of Nutramax's dog joint health supplements and the Wuffes Joint Chews and falsely represent that Nutramax's dog joint health supplements are inferior in quality to the Wuffes Joint Chews.

56.    Purportedly "independent" product reviews—like that found on the TCD Website—have a powerful effect on consumer purchasing decisions because consumers often rely on and trust third-party reviews for accurate information and unbiased opinions.

57.    The composition of and amounts of active ingredients to be administered in a pet health supplement product, and how that composition and amounts of active ingredients compares to other products on the market, is a key factor for consumers looking to purchase pet health supplement products and relates to an inherent quality or characteristic of the product. By communicating to consumers that WUFFES-branded products contain "optimized dosages" while Nutramax's products are "underdosed," Defendants have and continue to mislead consumers into believing that WUFFES-branded products must be superior to or of higher quality than competitors' (including Nutramax) products, which influences consumers to purchase WUFFES-branded products over Nutramax's products.

58.    The Dosage Claims are therefore material to consumers.

59.    The Dosage Claims have misled—and are likely to continue misleading—consumers into purchasing WUFFES-branded products instead of Nutramax's products.

60.    Nutramax has been and continues to be damaged as a result of the Wuffes Dosage Claims by loss of Nutramax's existing customers, loss of potential customers, and damage to Nutramax's goodwill and reputation.

61.    Accordingly, the Dosage Claims constitute false or misleading advertising.

**iv.    The False and Misleading Endorsement**

62.    In addition, the Advertisement deceives consumers into falsely believing that the Advertisement is the result of an independent, unbiased, and/or expert third-party review of Wuffes Joint Chews. In reality, the Advertisement is paid for by Wuffes, yet Defendants fail to adequately disclose this material connection to consumers:

    a.    First, the content featured on the TCD Website appears to contain unbiased reviews, endorsements, or testimonials about consumer products. Other portions of the TCD Website claim to maintain editorial independence and that their recommendations are backed by hours of product testing, research, and expert reviews. In reality, these representations of independence and objectivity are false because the TCD Website primarily includes paid advertisements and paid endorsements. Although portions of the TCD Website purport to disclose that The Customer Digest receives revenue through affiliate marketing programs or that they "may get paid commissions," these disclosures are insufficient to adequately alert consumers that The Customer Digest has material connections to the makers of the products it endorses, which biases its reviews and renders its claims of editorial independence and expert reviews false and misleading. Specifically, these disclosures that The Customer Digest

"may get paid commissions" are buried on separate pages and are neither clear nor conspicuous to adequately alert consumers.

b.  Second, the Advertisement itself violates the Federal Trade Commission's ("FTC") requirement that endorsements and testimonials feature a clear and conspicuous disclosure of a material inducement. FTC regulations govern what constitutes an impermissible endorsement or testimonial in advertising. *See* 16 C.F.R. § 255 *et seq*. Paid endorsements or testimonials must disclose the fact of payment in a clear and inconspicuous manner. The Advertisement contains the following disclosure: "At The Customer Digest, we only endorse brands and products we love. This is a paid advertisement for Wuffes." *See* Exhibit B. FTC regulations state that the disclosure "should not be contradicted or mitigated by, or inconsistent with, anything else in the communication." *See* 16 C.F.R. § 255.0(f). The disclaimer in the Advertisement is neither clear nor conspicuous. For example, the disclosure states that The Customer Digest only endorses products it loves, which implies that the following endorsement or testimonial is unbiased, which is not true. Similarly, the disclosure appears as the last sentence in a small line of type that is smaller than the text in the body of the Advertisement. Given the contradictory nature of the two sentences in the disclosure, the Advertisement is false or misleading and violates FTC regulations.

63.  The Advertisement also purportedly quotes a veterinarian, Dr. Joseph Menicucci, who states: "Wuffes is the only supplement of the three that 'supports both the structural integrity

of joints and the pain associated with joint issues[.]" *See* Exhibit B. These claims are false and misleading for at least three reasons:

    a. First, the Advertisement quotes a veterinarian to further obscure bias and to intentionally mislead consumers as to whose opinion is being presented. The use of quotations in this manner is intended to increase the "credibility" of the Advertisement and mislead consumers into believing the Advertisement is impartial and has the credibility of a so-called "expert's" opinion.

    b. Second, the Advertisement's claims that "Wuffes is the only supplement of the three that 'supports both the structural integrity of joints and the pain associated with joint issues'" is false.

    c. Third, the Advertisement's claims are not adequately substantiated. *See* 16 C.F.R. § 255.2(a) ("[T]he advertiser must possess and rely upon adequate substantiation, including, when appropriate, competent and reliable scientific evidence, to support express and implied claims made through endorsements[.]). Here, the Advertisement relies only on a one-dog sample, and the Wuffes Joint Chews were not tested in any scientifically valid manner. Additionally, the Advertisement is positioned as comparing the Wuffes Joint Chews to Nutramax's dog joint health supplements, but the effectiveness of Nutramax's dog joint health supplements was never tested. As explained by the FTC, "[c]onsumer endorsements themselves are not competent and reliable scientific evidence." *See* 16 C.F.R. § 255.2(a). Because of a lack of proper substantiation, the Advertisement is not only unlawful, but also likely to mislead consumers in violation of the relevant FTC regulations.

64.    The claims outlined in this section (the "Endorsement Claims") deceive consumers that The Customer Digest is an expert, unbiased, and independent organization with no material connection to Wuffes in connection with the endorsements given in the Advertisement and deceive consumers that The Customer Digest has adequate substantiation for the superiority claim that the Wuffes Joint Chews are "the only supplement of the three that 'supports both the structural integrity of joints and the pain associated with joint issues.'"

65.    "Independent" product reviews have a powerful effect on consumer purchasing decisions because consumers often rely on and trust third-party reviews for accurate information and unbiased opinions.

66.    Unless explicitly told otherwise, consumers are likely to understand "independent" product reviews to be free of undisclosed influences and biases. In contrast, when a recommendation is based upon an unreliable methodology and/or a relationship between the parties, it is not based on an honest assessment of the product or products compared.

67.    Consumers seeing the Advertisement would take away the message that The Customer Digest provides a reliable and unbiased review and recommendation of WUFFES-branded products. It does not.

68.    Whether a third-party publication provides expert, unbiased, independent, and/or substantiated reviews of consumer products is a key factor for consumers looking to purchase pet health supplement products.

69.    Veterinarian opinions have a strong impact on the purchasing decisions of dog owners. Similarly, purportedly "independent" product endorsements (like the Endorsement Claims) have a powerful effect on consumer purchasing decisions because consumers often rely on and trust third-party reviews for accurate information and unbiased opinions. Accordingly,

whether a veterinarian claims that Wuffes is the only supplement of the three that "'supports both the structural integrity of joints and the pain associated with joint issues,'" has and continues to mislead consumers to believe that WUFFES-branded products are more effective than and/or superior in quality to competing products.

70.     The Endorsement Claims are therefore material to consumers.

71.     The Endorsement Claims outlined above deceive or are likely to deceive consumers into believing that Nutramax's dog joint health supplements are inferior in quality to the Wuffes Joint Chews.

72.     The Endorsement Claims have misled—and are likely to continue misleading—consumers into purchasing WUFFES-branded products instead of Nutramax's products.

73.     Nutramax has been and continues to be damaged as a result of the Endorsement Claims by loss of Nutramax's existing customers, loss of potential customers, and damage to Nutramax's goodwill and reputation.

74.     Accordingly, the Endorsement Claims constitute false or misleading advertising.

**v.      Defendants' Unlawful, False, and Misleading Claims Have Caused Nutramax to Suffer Irreparable Harm and Damages**

75.     Nutramax has been harmed—and continues to be harmed—by Defendants' false and misleading advertising because they provide Wuffes an untrue and unjust advantage over Nutramax's products, with Nutramax being Wuffes' direct competitor.

76.     Defendants' claims caused damage to Nutramax's reputation.

77.     In addition, Defendants' false and misleading advertising have harmed—and continue to harm—in the form of damage to Nutramax's goodwill and reputation and by the loss

of both existing and prospective Nutramax customers, and especially across Nutramax's joint health supplement products that directly compete with Wuffes Joint Chews.

78.    Accordingly, Defendants' false and misleading advertising has proximately caused harm to Nutramax by causing consumers to withhold trade from Nutramax in favor of Wuffes and by causing Nutramax to suffer short- and long-term harm to its brand and reputation.

79.    Moreover, had consumers known that Defendants' advertising was false and misleading, they would have bought products from Wuffes' competitors, including Nutramax.

80.    Defendants' unfair business practices and false and misleading statements have irreparably harmed Nutramax's reputation, reduced Nutramax's competitive advantage and goodwill, and have caused and are causing Nutramax to suffer irreparable harm and damage.

81.    In addition, as a result of Defendants' misconduct as stated herein, Nutramax has suffered monetary damages, including lost profits, at all relevant times to this action.

82.    As a result of Defendants' misconduct as stated herein, Nutramax has also suffered irreparable injury including but not limited to loss of reputation and, unless Defendants are enjoined from such unfair competition, will continue to suffer irreparable injury, whereby Nutramax has no adequate remedy at law.

**<u>COUNT I</u>**
**False or Misleading Advertising**
**(15 U.S.C. § 1125)**

83.    Nutramax incorporates by reference the allegations set forth in Paragraphs 1 through 82 of the Complaint as if fully repeated and restated herein.

84.    The Wuffes Ingredient Claims, Comparison Claims, Artificial Ingredients Claims, Dosage Claims, and Endorsement Claims (collectively, the "Deceptive Claims") are false or

misleading and likely to cause consumer confusion, mistake, or deception as to the relative quality and effectiveness of the Wuffes Joint Chews and Nutramax's dog joint health supplements.

85.    Defendants' violations of FTC guidance further confirm the misleading nature of the Advertisement.

86.    The Deceptive Claims are material in that they relate to the products' inherent qualities and characteristics, and therefore are statements upon which customers or potential customers have relied and will continue to rely.

87.    Defendants' actions have a substantial effect on interstate commerce.

88.    Defendants' actions are likely to mislead and harm consumers.

89.    Because the Comparative Claims are made in the context of direct comparative advertising between the Wuffes Joint Chews and Nutramax's dog joint health supplements, harm to Nutramax is presumed as to those claims.

90.    Nutramax is also harmed by the Deceptive Claims because they provide an untrue and unjust advantage to the Wuffes Joint Chews which compete directly with Nutramax's dog joint health supplements. The Deceptive Claims have harmed—and continue to harm—in the form of damage to Nutramax's goodwill and reputation and by the loss of both existing and prospective Nutramax customers, and especially across Nutramax's joint health supplement products that directly compete with Wuffes Joint Chews.

91.    Defendants' actions have caused and are causing irreparable injury to Nutramax and, unless restrained, will continue to cause further irreparable injury to Nutramax, with no adequate remedy at law.

92.    Defendants' actions have caused and are causing direct financial injury to Nutramax and, unless restrained, will continue to cause further financial injury to Nutramax, in an amount to be proven at trial.

93.    Defendants' actions have caused Nutramax to lose sales of Nutramax's dog joint health supplements.

94.    Moreover, Defendants' actions have enabled them to obtain profits to which they are not in law, equity, or good conscience entitled and have unjustly enriched Defendants, all to Defendants' profit and Nutramax's detriment.

95.    Defendants had knowledge that the claims referenced herein were false or misleading, and therefore the aforesaid acts were undertaken willfully and deliberately and with the intention of causing confusion, mistake, or deception.

96.    Pursuant to 15 U.S.C § 1116(a), Nutramax is entitled to injunctive relief.

97.    Nutramax lost profits as a result of Defendants' conduct because consumers purchased Wuffes' products instead of Wuffes' competitors' products, including Nutramax, based on Defendants' false and misleading claims.

98.    Pursuant to 15 U.S.C. § 1117(a), Nutramax is entitled to recover: (1) Nutramax's damages in an amount not to exceed three times the amount found as actual damages; (2) Defendants' profits, the amount of which may be increased at the Court's discretion; (3) the costs of the action; and (4) because this is an exceptional case, its reasonable attorneys' fees.

## COUNT II
### Violation of New York General Business Law § 350
### (False Advertising)

99.    Nutramax incorporates by reference the allegations set forth in Paragraphs 1 through 82 of the Complaint as if fully repeated and restated herein.

100. The Deceptive Claims are literally false, implicitly false, or misleading to consumers.

101. The Deceptive Claims are likely to cause consumer confusion, mistake, or deception as to the relative quality and effectiveness of the Wuffes Joint Chews products.

102. Defendants' violations of FTC guidance further confirm the misleading nature of the Advertisement.

103. The Deceptive Claims are material in that they relate to the inherent qualities and characteristics of the Wuffes Joint Chews and Nutramax's dog joint health supplements, and therefore are statements upon which customers or potential customers have relied and will continue to rely.

104. The Deceptive Claims mislead and harm consumers because they misrepresent the relative quality of the Wuffes Joint Chews and Nutramax's dog joint health supplements. Nutramax is similarly harmed by the misrepresentations about the relative quality of Nutramax's dog joint health supplements compared to the Wuffes Joint Chews.

105. The Deceptive Claims were widely disseminated with the intent to bolster the sale of the Wuffes Joint Chews, and thus constitute commercial advertising and promotion as well as consumer-oriented conduct.

106. Because the Comparative Claims are made in the context of direct advertising comparing the Wuffes Joint Chews and Nutramax's dog joint health supplements, harm to Nutramax for those claims is presumed.

107. Nutramax is also harmed by the Deceptive Claims because they provide an untrue and unjust advantage to the Wuffes Joint Chews which compete directly with Nutramax's dog joint health supplements. The Deceptive Claims have harmed—and continue to harm—in the form

of damage to Nutramax's goodwill and reputation and by the loss of both existing and prospective Nutramax customers, and especially across Nutramax's joint health supplement products that directly compete with Wuffes Joint Chews.

108.    The deceptive nature of the Deceptive Claims is contrary to honest business practices and constitutes unfair competition.

109.    Defendants' actions have caused and are causing irreparable injury to Nutramax and, unless restrained, will continue to cause further irreparable injury to Nutramax, with no adequate remedy at law.

110.    Defendants' actions have caused and are causing direct financial injury to Nutramax and, unless restrained, will continue to cause further financial injury to Nutramax, in an amount to be proven at trial.

111.    Defendants' actions have caused Nutramax to lose sales of Nutramax's dog joint health supplements.

112.    Moreover, Defendants' actions have enabled them to obtain profits to which they are not in law, equity, or good conscience entitled and have unjustly enriched Defendants, all to Defendants' profit and Nutramax's detriment.

113.    Because the Deceptive Claims are false or misleading and have caused through such deception harm to Nutramax, Defendants' actions constitute unlawful deceptive acts or practices in the conduct of trade or commerce in violation of N.Y. Gen. Bus. Law § 350.

114.    Nutramax is entitled to preliminary and permanent injunctive relief as to Defendants' unlawful conduct.

## COUNT III
### Violation of New York General Business Law § 349
### (Unlawful Deceptive Acts and Practices)

115.    Nutramax incorporates by reference the allegations set forth in Paragraphs 1 to 82 of the Complaint as if fully repeated and restate herein.

116.    The Deceptive Claims are literally false, implicitly false, or misleading to consumers.

117.    The Deceptive Claims are likely to cause consumer confusion, mistake, or deception as to the relative quality of the Wuffes Joint Chews as compared to Nutramax's dog joint health supplements.

118.    Defendants' violations of FTC guidance are unlawful and further confirm the misleading nature of the Advertisement.

119.    The Deceptive Claims are material in that they are likely to influence consumers' purchasing decisions.

120.    Defendants' actions mislead and harm consumers. Nutramax is also harmed by the Deceptive Claims because they provide an untrue and unjust advantage to the Wuffes Joint Chews which compete directly with Nutramax's dog joint health supplements. The Deceptive Claims have harmed—and continue to harm—in the form of damage to Nutramax's goodwill and reputation and by the loss of both existing and prospective Nutramax customers, and especially across Nutramax's joint health supplement products that directly compete with Wuffes Joint Chews.

121.    The Deceptive Claims were widely disseminated with the intent to bolster the sale of the Wuffes Joint Chews, and thus they constitute commercial advertising and promotion as well as consumer-oriented conduct.

122.    Defendants' actions have caused and are causing irreparable injury to Nutramax and, unless restrained, will continue to cause further irreparable injury to Nutramax, with no adequate remedy at law.

123.    Defendants' actions have caused and are causing direct financial injury to Nutramax and, unless restrained, will continue to cause further financial injury to Nutramax, in an amount to be proven at trial.

124.    Moreover, Defendants' actions have enabled them to obtain profits to which they are not in law, equity, or good conscience entitled and have unjustly enriched Defendants, all to Defendants' profit and Nutramax's detriment.

125.    Because the Deceptive Claims are false or misleading and have caused through such deception harm to Nutramax, Defendants' actions constitute unlawful deceptive acts or practices in the conduct of trade or commerce in violation of N.Y. Gen. Bus. Law § 349.

126.    Nutramax lost profits as a result of Defendants' conduct because consumers purchased Wuffes' products instead of Wuffes' competitors' products, including Nutramax, based on Defendants' false and misleading claims.

127.    Nutramax is entitled to a preliminary and permanent injunction, and also to recover: (1) Nutramax's actual damages; and (2) its reasonable attorneys' fees.

## <u>COUNT IV</u>
## New York Common Law Unfair Competition

128.    Nutramax incorporated by reference the allegations set forth in Paragraphs 1 to 82 of the Complaint as if fully repeated and restated herein.

129.    Defendants' Deceptive Claims are literally false, implicitly false, or misleading to consumers.

130.    The Deceptive Claims are likely to cause consumer confusion, mistake, or deception as to the superiority of the Wuffes Joint Chews over other brands in the pet supplement industry, including Nutramax's dog joint health supplements.

131.    Defendants' violations of FTC guidance further confirm the misleading nature of the Advertisement.

132.    The Deceptive Claims are material in that they are likely to influence consumers' purchasing decisions.

133.    Defendants' actions mislead and harm consumers. Nutramax is also harmed by the Deceptive Claims because they provide an untrue and unjust advantage to the Wuffes Joint Chews which compete directly with Nutramax's dog joint health supplements.  The Deceptive Claims have harmed—and continue to harm—in the form of damage to Nutramax's goodwill and reputation and by the loss of both existing and prospective Nutramax customers, and especially across Nutramax's joint health supplement products that directly compete with Wuffes Joint Chews.

134.    The Deceptive Claims were widely disseminated with the intent to bolster the sales of the Wuffes Joint Chews, and thus they constitute commercial advertising and promotion.

135.    Defendants knew that the Deceptive Claims referenced herein are false or misleading, and therefore the aforesaid acts were malicious and made in bad faith.

136.    The deceptive nature of the Deceptive Claims is contrary to honest business practices and constitutes unfair competition under New York common law.

137.    Defendants have caused and are causing direct financial injury to Nutramax and, unless restrained, will continue to cause further financial injury to Nutramax, in an amount to be proven at trial.

138.    Moreover, Defendants' actions have enabled them to obtain profits to which they are not in law, equity, or good conscience entitled and have unjustly enriched Defendants, all to Defendants' profit and Nutramax's detriment.

139.    Defendants' actions complained of herein constitute unfair competition in violation of New York common law.

140.    Nutramax lost profits as a result of Defendants' conduct because consumers purchased Wuffes' products instead of Wuffes' competitors' products, including Nutramax, based on Defendants' false and misleading claims.

141.    Nutramax is entitled to a preliminary and permanent injunction, and is entitled to recover: (1) Nutramax's actual damages; (2) Defendants' profits; (3) punitive damages; (4) the costs of the action; and (5) its reasonable attorneys' fees.

## COUNT V
### New York Common Law Trade Libel

142.    Nutramax incorporates by reference the allegations set forth in Paragraphs 1 through 82 of the Complaint as if fully repeated and restated herein.

143.    The Comparison Claims are literally false or implicitly false as to the composition and relative quality of Nutramax's dog joint health supplements.

144.    Defendants' violations of FTC guidance further confirm the misleading nature of the Advertisement.

145.    The Comparative Claims were published on the TCD Website at <https://thecustomerdigest.com/post/wuffes-dog-joint-supplement-review-does-it-really-beat-the-leading-brands>. *See* Exhibit B.

146.    The Customer Digest was willfully ignorant to the composition of Nutramax's joint health supplements and deliberately mischaracterized them.

147.    Had the Customer Digest conducted any meaningful research into Nutramax's dog joint health supplements, it would have quickly realized the falsity of the Comparative Claims. For example, minimal research would have disproven the misrepresentation that that Nutramax does not offer a chewable joint health supplement with MSM. As outlined above, Nutramax produces and markets chewable dog joint health supplements that contain MSM. *See* Exhibit C.

148.    As a result of the Comparative Claims, Nutramax suffered damage to its goodwill and reputation.

149.    Defendants' actions complained of herein constitute trade libel in violation of New York Common law.

150.    Nutramax lost profits as a result of Defendants' conduct because consumers purchased Wuffes' products instead of Wuffes' competitors' products, including Nutramax, based on Wuffes' false and misleading claims.

151.    Nutramax is entitled to a preliminary and permanent injunction and is entitled to recover: (1) Nutramax's actual damages; (2) Defendants' profits; (3) punitive damages; (4) the costs of the action; and (5) its reasonable attorneys' fees.

## DEMAND FOR JURY TRIAL

Nutramax demands a jury trial on all claims for which trial by jury is available.

## PRAYER FOR RELIEF

WHEREFORE, Nutramax respectfully prays for the following relief:

A.    The Court enter judgment that Defendants, as a result of their willful, deliberate, and materially false and misleading statements, have engaged in (1) false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C § 1125(a); (2) false advertising in violation of New York General Business Law § 350; (3) unlawful and deceptive acts in violation of New York

General Business Law § 349; (4) unfair competition in violation of New York common law; and (5) trade libel in violation of New York common law.

      B.      The Court enter judgment finding that this is an exceptional case;

      C.      The Court grant Nutramax a temporary, preliminary, and permanent injunction:

          1.   enjoining Defendants from making any additional false and/or misleading advertising, marketing, promotion, or statements concerning Wuffes' products, Nutramax, or any of Nutramax's products;

          2.   ordering Defendants to immediately take down the false and misleading advertisements described herein;

          3.   ordering Defendants to engage in a program of corrective advertising, subject to the Court's approval, to ameliorate the false or misleading information that Defendants have promulgated;

      D.      The Court grant an award of damages in an amount sufficient to compensate Nutramax for injury it has sustained as a consequence of Defendants' unlawful acts;

      E.      The Court grant a disgorgement of Defendants' profits;

      F.      The Court grant an award of punitive damages in an amount sufficient to punish and deter Defendants from engaging in further knowing acts of false advertising;

      G.      The Court grant the costs of this action and the reasonable attorneys' fees Nutramax incurs in connection with this action;

      H.      The Court grant Nutramax's prejudgment interest and costs; and

      I.      The Court grant such other, different, and additional relief as the Court deems just and proper.

Respectfully submitted, this 7th day of April, 2025.

By:   *s/ Elizabeth A. Buckel*
_____

Natalie C. Clayton
Elizabeth A. Buckel
**Alston & Bird LLP**
90 Park Avenue, Floor 15
New York, New York 10016-1387
Telephone: 212-210-9400
*natalie.clayton@alston.com*
*elizabeth.buckel@alston.com*

OF COUNSEL (*pro hac vice applications to be submitted*):

Jason D. Rosenberg
Alan F. Pryor
T. Austin Weatherly
**Alston & Bird LLP**
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
*jason.rosenberg@alston.com*
*alan.pryor@alston.com*
*austin.weatherly@alston.com*

*Attorneys for Plaintiffs Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc.*